UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
In re:

       Frank Maglio,                              Chapter 7
                                         Case No. 15-41734-NHL

                 Debtor.

------------------------------------------------------------

**Brief of Wells Fargo Bank, N.A. not in individual capacity but solely
as Trustee for RMAC REMIC Trust, Series 2009-4 c/o
Rushmore Loan Management Services LLC**

Respectfully submitted,
**KNUCKLES, KOMOSINSKI & MANFRO, LLP**
STUART L KOSSAR, ESQ.
*Attorneys for Creditor*
Elmsford, NY 10523
(914) 345-3020
slk@kkmllp.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... ii

PRELMINARY STATEMENT ................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................. 1

    i.    Loan Background................................................................ 2

    ii.    Pre-Bankruptcy Loss-Mitigation Efforts............................... 3

    iii.    Bankruptcy Background Prior to Loss-Mitigation Order............ 3

    iv.    Loss-Mitigation Background............................................... 5

ARGUMENT........................................................................................ 9

    i.    In Re Hosking and applicable case law does not establish that
        Requiring a down payment in a trial modification is "bad faith"
        or that refusing to permit borrower to pay a down payment
        over a two year period is bad faith.

CONCLUSION.................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

Bankers Trust Co. v. Hoovis, 263 A.D.2d 937 (3d Dept. 1999)........................    11

EMC Mortgage Corp. v. Stewart, 2 A.D.3d 772, 773 (2d Dept. 2003)..............    11

Home Sav. of Am., FSB v. Isaacson, 240 A.D.2d 633 (2d Dept. 1997)...............    11

In Re A.T. Reynolds & Sons, Inc., 452 B.R. 374 (S.D.N.Y. 2011)........................    14

In Re Davis, 557 B.R. 433 (Bank. D.S.C. 2016)...............................................    12

In Re Fatato (Case No. 15-22898).................................................................    13

In Re Iannacone (Case No. 13-11163)...........................................................    13

In Re Kamalic (Case No. 16-74034)...............................................................    13

In Re Schoonmaker (Case No. 16-36005).......................................................    13

In Re Vanorden (Case No. 12-30018-5).........................................................    13

In re Veronica C. Hosking, 528 B.R. 614 (Bankruptcy S.D.N.Y. 2015); aff'd,
Rushmore Loan Management Services LLC v. Hosking (In re Hosking),
2016 WL 128209 (S.D.N.Y. 2016)..............................................................    10, 11

Levine v. Infidelity, Inc., 285 A.D.2d 629 (2d Dept. 2001)..............................    11, 12

**Loss Mitigation Programs**

United States Bankruptcy Court, District Court of Rhode Island
Loss Mitigation Program and Procedures...................................................    9

United States Bankruptcy Court Eastern District of Wisconsin
Chapter 13 Mortgage Modification Program...............................................    10

United States Bankruptcy Court Western District of Pennsylvania,
Rule 9020-3(f)..................................................................................    10

United States Bankruptcy Court Middle District of Florida.............................  10

United States Bankruptcy Court, District of New Jersey
Loss Mitigation Program and Procedures......................................................  10

United States Bankruptcy Court Northern District of California
Guidelines Regarding Residential Loan Modifications On
Relief From Stay Motions and In Chapter 11 and 13 Plans............................  10

United States Bankruptcy Court Eastern District of New York
Loss Mitigation Program Procedures............................................................  10

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
In re:

      Frank Maglio,                        Chapter 7
                                         Case No. 15-41734-NHL

             Debtor.

-------------------------------------------------------------

## PRELMINARY STATEMENT

    Wells Fargo Bank, N.A. not in individual capacity but solely as Trustee for RMAC REMIC Trust, Series 2009-4 c/o Rushmore Loan Management Services LLC[1] ("Creditor") respectfully submits this brief pursuant to this Court's directive at the May 10, 2017 loss mitigation status conference at which the Creditor and Debtor, Frank Maglio ("Debtor"), are to brief the following two issues: (i) whether In re Veronica C. Hosking, 528 B.R. 614 (Bankruptcy S.D.N.Y. 2015); aff'd, Rushmore Loan Management Services LLC v. Hosking (In re Hosking), 2016 WL 128209 (S.D.N.Y. 2016) (and other any other relevant cases) provide that requiring a down payment in a trial modification is "bad faith" and (ii) whether refusing to allow a borrower to pay a down payment over a two year period is bad faith.

    This brief will also provide the Court with: (i) relevant background regarding the Debtor's default on the loan originating in 2007 and (ii) a review of the Creditor's good faith loss mitigation efforts during the bankruptcy case including two (2) trial

---

[1] Rushmore Loan Management Services LLC ("Rushmore") is the servicer of Debtor's loan at issue in this proceeding.

1

modification agreements that Debtor rejected including a trial modification offer that does not require a down payment.

As further stated herein for more than almost two (2) years, Creditor has participated in good faith in loss mitigation and has offered the Debtor every available loss mitigation alternative. Unfortunately, Debtor has refused to accept same.  As such, loss mitigation should be terminated.

## FACTUAL AND PROCEDURAL BACKGROUND

I.    **Loan Background**

Pursuant to a loan transaction consummated on or about May 21, 2007, the Debtor borrowed the sum of $271,200.00 and executed an Adjustable Rate Note bearing said date whereby she undertook to pay the holder thereof monthly payments on the twenty-fifth day of each month beginning on June 25, 2007.  As collateral security for the payment of this sum, the Debtor duly executed, acknowledged and delivered to Household Finance Realty Corporation of New York ("Household Finance") a mortgage also bearing said date (the "Mortgage") wherein and whereby Household Finance was granted a mortgage lien on the real property commonly known as 15 Wirt Avenue, Unit 287, Staten Island, New York 10309.  The Mortgage was duly recorded with the Office of the Richmond County Clerk on June 21, 2007 as Land Doc. 203299. Copies of the Note and Mortgage are collectively annexed hereto as **Exhibit A**. The Note and Mortgage were subsequently assigned to Creditor as evidenced by the allonge/indorsement affixed to the Note and later by an assignment of mortgage dated July 7, 2010.  A copy of the assignment of mortgage is annexed hereto as **Exhibit B**.

2

## II.    Pre-Bankruptcy Loss-Mitigation Efforts

Since the origination of the loan on May 21, 2007, Debtor has made only twenty-four (24) payments and defaulted on June 25, 2009 over eight (8) years ago.  In July 2010, Creditor commenced a foreclosure action in Richmond County Supreme Court in which Debtor participated in the CPLR 3408 settlement part and contested the foreclosure action (Index No. 13116-2010).  In addition Creditor filed an application for a judgment of foreclosure and sale but same was later withdrawn due to the instant bankruptcy action. A copy of the ecourts printout is annexed hereto as **Exhibit C**.

On or about October 31, 2013, Debtor was approved for an in-house loan modification. Six (6) Separate Short Term Forbearance Agreements with multiple down payment options were sent to Debtor to be executed and returned. However, Debtor never sent back the agreements. Rushmore attempted to contact Debtor on numerous occasions but was unsuccessful. A copy of the correspondence with Short Term Forbearance Agreement is annexed hereto as **Exhibit D**. On April 17, 2014, correspondence was sent to Debtor requesting that he call Rushmore to discuss his default. A copy of the April 17, 2014 correspondence is annexed hereto as **Exhibit E**. On April 30, 2014, correspondence was sent to Debtor regarding a possible short sale of the Premises in lieu of a foreclosure sale. A copy of the April 30, 2014 correspondence is annexed hereto as **Exhibit F**.

## III.    Bankruptcy Background Prior to Loss Mitigation Entered Being Ordered

On April 18, 2015, Debtor, by his first attorney, Derrick Hanna, Esq. filed a petition for relief under Chapter 7 of the Bankruptcy Code (ECF No. 1).  On April 23,

2015, Creditor appeared through its counsel Knuckles, Komosinski Manfro, LLP by a notice of appearance (ECF No. 8). On July 19, 2016, Debtor, by his second attorney, Robert Stumpf, Esq. filed a request to enter loss mitigation (ECF No. 14). On July 22, 2015, Creditor filed an objection to Debtor's request for loss mitigation based upon (among other things) Debtor's initial default and Debtor's default under a prior forbearance agreement. (ECF No. 15). A copy of Creditor's Objection is annexed hereto as **Exhibit G** (exhibits omitted). Debtor also filed a supplemental affidavit and Creditor filed a responsive letter (ECF Nos. 20, 21). Copies of which are collectively annexed hereto as **Exhibit H** (exhibits omitted). The hearing on Creditor's objection to loss mitigation was adjourned multiple times due to Debtor obtaining new counsel for Debtor to determine if he wanted to proceed with loss-mitigation based upon Creditor's objection and the attenuated default.

On November 24, 2015 a hearing was held in which, Debtor's third attorney, Elaine Fridlin, Esq. requested an adjournment of the hearing for Debtor to submit a modification package under HAMP. The Court then asked Debtor to provide the regulations that purportedly require HAMP and adjourned the case until December 15, 2015.

On December 14, 2015, immediately prior to the hearing, Debtor's counsel filed a supplemental response to Creditor's objection (ECF No. 23). A copy of which is annexed hereto as **Exhibit I**. On December 27, 2015, after the December 14, 2015 hearing, the Court issued an Order directing Creditor's representative to appear for

failure to withdraw its objection to loss mitigation (ECF NO. 24).[2] A copy of the Order is annexed hereto as **Exhibit J**. However, by letter dated January 21, 2016, Creditor consented to loss mitigation and the Order was withdraw. A copy of the January 21, 2016 letter is annexed hereto as **Exhibit K**. A loss mitigation order was entered on February 6, 2016 directing a loss mitigation status conference for February 24, 2014 ECF NO. 29).

## IV.    Loss-Mitigation Background

On February 12, 2016, Creditor provided a loss mitigation package for Debtor (ECF No. 31). A copy of which is annexed hereto as **Exhibit L**. At the March 15, 2016 hearing, the Court was advised that an initial package was received and a missing documents letter was issued. As such, the Court adjourned the matter until May 10, 2016 (ECF No. 32). Thereafter, additional documents were received on April 28, 2016 and Creditor requested further documents on May 3, 2016 (ECF No. 34). A copy of Creditor's May 6, 2016 status letter confirming same is annexed hereto as **Exhibit M**. On the day of the May 10, 2017 hearing, Debtor filed a status letter confirming Creditor requested Debtor provide proof of funds for a down payment of 25% of the arrears or a letter representing whether Debtor has the funds. In addition, Debtor did not dispute Creditor's right to request this information and/or that it could be a condition to

---

[2] This Court is respectfully reminded that Debtor's counsel on seven (7) separate occasions has exhibited a continuous pattern in which she waits until the eve of the scheduled status conference or the same day as the scheduled status conference to file a status letter in violation of this Court's Orders. This is an obvious attempt to delay this matter and put Creditor in a position where it cannot timely respond to Debtor's correspondence. (See ECF Nos 23, 35, 39, 45, 53, 58, 66)

obtaining a loan modification (ECF NO. 35). A copy of Debtor's status letter is annexed hereto as **Exhibit N**. The case was adjourned until July 19, 2016 (ECF No. 36)

On June 15, 2016, Creditor advised that Debtor was denied for failure to submit a completed package (ECF No. 38). A copy of Creditor's letter June 15, 2016 letter is annexed hereto as **Exhibit O.** On July 18, 2016, Debtor filed a loss mitigation status report immediately prior to the scheduled status conference incorrectly claiming (among other things) that Debtor was wrongly denied for failure to provide a down payment (ECF No. 39). A copy of the July 18, 2016 letter is annexed hereto as **Exhibit P** (exhibits omitted). At the July 19, 2016 status conference, the parties were directed to conduct a conference call and the Court adjourned the hearing until September 13, 2016 (ECF No. 42). During the conference call the parties agreed that: (i) Debtor would provide a complete financial package and accompanying documentation; (ii) Debtor would provide a signed dated/letter advising if he has funds available for a down payment, detailing the amount of funds available for down payment and proof of funds for same or (alternatively), if Debtor does not have any funds for a down payment, then Debtor would provide a signed/dated letter stating same and (iii) Creditor was to provide Debtor with instructions on how to obtain a payoff and/or reinstatement. In addition, Debtor did not provide any additional documents (ECF No. 44). A copy of the September 7, 2016 status letter confirming same is annexed hereto as **Exhibit Q**. On September 13, 2016, Debtor filed a status letter advising documents were sent to Creditor. A copy of the September 13, 2016 letter is annexed hereto as **Exhibit R** (ECF

No. 45). The Court then adjourned this matter until November 17, 2016 (See ECF No. 464).

As shown by Creditor's November 10, 2016 status letter, Creditor requested additional documents since the prior conference but Debtor failed to provide the bank account information. A copy of the November 10, 2016 status letter is annexed hereto as **Exhibit S** (ECF No. 49). At the November 17, 2016 conference, the Court then adjourned the status conference until January 11, 2017 (ECF No. 50).

As shown by Creditor's December 29, 2017 status letter, Debtor provided a completed package on December 1, 2016 (ECF No. 52). On December 28, 2017, Debtor was denied for a loan modification due to insufficient income, not for anything related to a down payment. A copy of the January 3, 2017 status letter is annexed hereto as **Exhibit T**. On the same day as the January 11, 2017 status conference, Debtor filed a status letter which among other incorrectly claimed the income was wrongly calculated (ECF No. 53). A copy of Debtor's January 11, 2017 status letter is annexed hereto as **Exhibit U**. At the January 11, 2017 status conference, the Court adjourned the status conference until March 7, 2017 to allow Creditor time to respond Debtor's status letter filed on the day of the conference (ECF No. 54).

As shown by Creditor's February 22, 2017 status letter, on January 25, 2017, Creditor provided a detailed response to the issues raised in Debtor's January 11, 2017 letter (ECF No. 56). A copy of the February 23, 2017 status letter is annexed hereto as **Exhibit V**. Over one month later on March 1, 2017, Debtor filed a status letter requesting further information on the denial, some information of which was already

provided to Debtor. A copy of Debtor's March 1, 2017 letter and Creditor's March 3, 2017 responsive letter is annexed hereto as **Exhibit W.** On March 6, 2017, one day prior to the March 7, 2017 conference, Debtor filed another status letter requesting additional information relating to the denial (ECF No. 58). A copy of which is annexed hereto as **Exhibit X**. The March 7, 2017 status conference was adjourned to April 18, 2017 for the parties to have conference call to discuss these issues.

Creditor then provided a trial modification agreement which required an initial down payment of $25,250.00 (represented 25% of the arrears) and a monthly payment of $2,170.00 each month for six (6) months. A copy of Creditor's April 13, 2017 status letter is annexed hereto as **Exhibit Y** (ECF No. 61). On April 17, 2017, the date of the status conference, Debtor filed a status letter requesting additional information about the modification agreement. A copy of Debtor's status letter is annexed hereto as **Exhibit Z** (ECF No. 62). On April 18, 2017, the Court adjourned the matter until May 10, 2017.

On April 18, 2017, Creditor provided another explanatory letter regarding the modification. However, Debtor did not indicate she would accept the loan modification or respond to Creditor's follow up emails. A copy of Creditor's May 2, 2017 status letter confirming same is annexed hereto as **Exhibit AA**. On May 10, 2017, the same day as the conference Debtor advised he would accept the trial modification but without the modification (ECF No. 66). However, this is not the proposal offered by Creditor nor did not Debtor discuss these changes with Creditor's counsel. A copy of Debtor's May 10, 2017 status letter is annexed hereto as **Exhibit BB.**

At the May 10, 2017 conference Debtor alleged Creditor was acting in "bad faith" for requiring a down payment and the Court directed the parties to file briefs on June 16, 2017.

On May 24, 2017, Creditor provided Debtor another trial modification that did not require a down payment and required Debtor to make six (6) monthly payments of $2,290.00 per month.[3]  Despite Creditor's multiple follow up emails. Debtor did not respond until June 14, 2014, when Debtor accepted the trial modification but drastically altered the terms of same without discussing the proposed changes with Creditor's counsel.  To date, Debtor has not accepted the trial modification. A copy of the trial modification, relevant correspondence, and Debtor's revised trial modification are collectively annexed hereto as **Exhibit CC**.

To date, $501,250.00 (exclusive of legal fees and costs) remains due and owing to Creditor and since the default in June 2009.  In addition, Creditor has advanced $22,825.34 in taxes and insurance due to the eight (8) year default.

## ARGUMENT

I.  **In Re Hosking and applicable case law does not establish that requiring a down payment in a trial modification is "bad faith" or that refusing to permit borrower to pay a down payment over a two year period is bad faith.**

The instant matter centers on "Loss Mitigation." Many bankruptcy courts have adopted their own Loss Mitigation programs intended to assist Debtors who are allegedly at risk of foreclosure.  See United States Bankruptcy Court, District Court of

---

[3] This Court should note that Debtor previously accepted a $2,170.00 payment without a trial modification. Despite the mere $120.00, increase Debtor refused to accept the latest trial modification.

Rhode Island Loss Mitigation Program and Procedures; United States Bankruptcy Court Eastern District of Wisconsin, Chapter 13 Mortgage Modification Program; United States Bankruptcy Court Western District of Pennsylvania, Rule 9020-3(f); United States Bankruptcy Court Middle District of Florida; United States Bankruptcy Court, District of New Jersey Loss Mitigation Program and Procedures; United States Bankruptcy Court Northern District of California Guidelines Regarding Residential Loan Modifications On Relief From Stay Motions and In Chapter 11 and 13 Plans. The United States Bankruptcy Court of the Eastern District of New York has adopted its own loss mitigation program and procedures (the "Loss Mitigation Program"). See United States Bankruptcy Court Eastern District Court of New York Loss Mitigation Program Procedures.

In Re Hosking[4], involved a loss mitigation event before Chief Judge Cecelia G. Morris in United States Bankruptcy Court Southern District of New York. In short, Ms. Hosking defaulted on two (2) prior mortgage loan modifications. She then filed for Chapter 13 Bankruptcy on January 31, 2014 and requested loss mitigation. After numerous correspondences, Rushmore (on behalf of the Creditor) denied Debtor for a loan modification as the amount of good faith down payment was insufficient for failing to provide proof of payment the down payment of the arrears. Ultimately, the Court set the matter for an evidentiary hearing.

---

[4] For further detail the Court is respectfully referred to the brief filed by the undersigned in the Hosking case annexed hereto as **Exhibit DD** and In re Veronica C. Hosking, 528 B.R. 614 (Bankruptcy S.D.N.Y. 2015); aff'd, Rushmore Loan Management Services LLC v. Hosking (In re Hosking), 2016 WL 128209 (S.D.N.Y. 2016).

Judge Morris sanctioned Rushmore for its failure to participate in loss mitigation in good faith on two grounds: (1) Rushmore's purported failure to designate someone with settlement authority and (2) alleged failure to inform Debtor of the 25% down payment requirement. On appeal, the District Court affirmed, in part. The District Court found that the bankruptcy court incorrectly held Rushmore failed to participate in loss mitigation in good faith by failing to designate someone with full settlement authority because the court never reached any factual determination about the issue prior to its order issuing sanctions. However, the District Court affirmed the bankruptcy court finding that it did not abuse its discretion in determining Debtor was not properly informed of the 25% down payment requirement. There was never <u>any</u> discussion by the bankruptcy court or the district court as to whether a creditor by requiring a down payment in a trial modification is acting "bad faith" or whether refusing to allow a borrower to pay a down payment over a two year period is "bad faith".

Case law is clear that that no provision in law, barring a finding of fraud or collusion, obligates a lender to accept an insufficient tender of payment of arrears or requires a lender to perform beyond the terms of its contract. <u>Levine v. Infidelity, Inc.</u>, 285 A.D.2d 629 (2d Dept. 2001); <u>quoting</u> <u>Nassau Trust Co. v. Montrose Concrete Prods.</u> <u>Corp.</u>, 56 N.Y.2d 175, 183 (1982); <u>Bankers Trust Co. v. Hoovis</u>, 263 A.D.2d 937 (3d Dept. 1999); <u>Home Sav. of Am., FSB v. Isaacson</u>, 240 A.D.2d 633 (2d Dept. 1997). Once "a mortgagor defaults on loan payments, even if only for a day, a mortgagee may accelerate the loan, require that the balance be tendered or commence foreclosure

proceedings, and <u>equity will not intervene.</u>"   <u>Isaacson</u>, 240 A.D.2d at 633 [emphasis added]; <u>see</u> <u>also</u> <u>EMC Mortgage Corp. v. Stewart</u>, 2 A.D.3d 772, 773 (2d Dept. 2003). As such, Creditor is under no obligation to accept any agreement or payment short of full payoff.  <u>See</u> <u>Levine</u>, 285 A.D.2d 629.    To meet the requirement of "good faith," a creditor does not have to offer a loan modification. <u>In re A.T. Reynolds & Sons, Inc.</u>, 452 B.R. 374, 384 (S.D.N.Y.2011) (holding that parties cannot be forced to make a settlement offer and cannot be coerced into a settlement by the court).

<u>In Re Hosking</u> is entirely inapplicable to this case.  In <u>In Re Hosking</u>, the narrow issue was whether Creditor failed to inform Debtor of the down payment requirement. In essence, it was an issue of communication. The court did not rule as whether a down payment itself was improper.   In addition, unlike <u>In Re Hosking</u>, Debtor has been offered two modification agreements during the bankruptcy case, one of which did not require a down payment.  There was never a requirement for a down payment or any denial for failure to offer proof of funds for a down payment. In fact, Debtor has never alleged there was a "failure to inform" Debtor of the down payment requirement (as in Hosking).  As such, <u>In Re Hosking</u> is factually distinguishable from the instant case.

Moreover, <u>In Re Hosking</u> has no precedential value.  In fact, Hosking is only cited in one other case, <u>In Re Davis</u>, 557 B.R. 433 (Bank. D.S.C. 2016).  In that case, the South Carolina Bankruptcy Court only cited Hosking for the purpose of authority to sanction a creditor.  <u>In Re Davis</u> had nothing do with a down payment.

In addition, there is absolutely no authority that a Creditor cannot require a down payment or that refusing Debtor to pay a down payment over a two year period

12

is bad faith. In fact, New York Bankruptcy courts have permitted similar modification agreement where a down payment is required. Specifically, it should be noted that Rushmore has entered into modification agreements in bankruptcy courts across New York State similar to one proposed in this case on multiple occasions with down payment requirement as follows:

1) In <u>In Re Iannacone</u> (Case No. 13-11163), a bankruptcy case in the Bankruptcy Court of the Southern District of New York before Judge Robert D. Drain, the parties entered into an trial modification agreement whereby Debtor made an initial $2,720.00 down payment. Copies of the bankruptcy court docket evidencing said bankruptcy proceedings and trial modification agreement are collectively annexed hereto as **Exhibit EE.**

2) In <u>In Re Fatato</u> (Case No. 15-22898), a bankruptcy case in the Bankruptcy Court of the Southern District of New York before Judge Robert D. Drain, the parties entered into an trial modification agreement whereby Debtor made an initial $20,000.00 down payment. Copies of the bankruptcy court docket evidencing said bankruptcy proceedings and trial modification agreement are collectively annexed hereto as **Exhibit FF.**

3) In <u>In Re Vanorden</u> (Case No. 12-30018-5), a bankruptcy case in the Bankruptcy Court of the Northern District of New York before Chief Judge Margaret M. Cangilos-Ruiz, the parties entered into an trial modification agreement whereby Debtor made an initial $22,000.00 down payment. Copies of the bankruptcy court docket evidencing said bankruptcy proceedings and trial modification agreement are collectively annexed hereto as **Exhibit GG.**

4) In <u>In Re Kamalic</u> (Case No. 16-74034), bankruptcy case in the Bankruptcy Court of the Eastern District Court before Judge Robert E. Grossman, the parties entered into a trial modification agreement whereby Debtor made an initial $2,920.00 down payment. Copies of the bankruptcy court docket evidencing said bankruptcy proceedings and trial modification agreement are collectively annexed hereto as **Exhibit HH.**

5) In <u>In Re Schoonmaker</u> (Case No. 16-36005), a bankruptcy case in the Bankruptcy Court of the Southern District of New York before Chief Judge Cecelia G. Morris, the parties entered into a trial modification agreement whereby Debtor made an initial $35,000.00 down payment (more than in the proposed trial modification in this case). Copies of

the bankruptcy court docket evidencing said bankruptcy proceedings and trial modification agreement are collectively annexed hereto as **Exhibit II**.

The reason that Bankruptcy Judges across New York state, including Chief Judge Morris (who issued the Hosking decision) to permit loan modifications with down payments -  There is absolutely no authority that a Creditor cannot require a down payment or that refusing to permit a Debtor to pay a down payment over a two year period is bad faith. As such, this Court should find that Creditor has acted in good faith throughout this bankruptcy case.

In addition, it respectfully submitted that the issues raised by the Court are mooted by the recent trial modification offer, which did not require a down payment.

## CONCLUSION

Despite being offered two (2) loan modifications, Debtor has failed to accept same. In addition, there is no basis for Debtor's contention that to require a down payment is "bad faith". Simply put, as Debtor has failed to make any mortgage payments since June 2009, rejected multiple modification proposals, it shows he has no intentions of working with Creditor and is simply delaying this action.

WHEREFORE, it is respectfully requested that the Court terminate the loss mitigation period and grant such other and further relief as is just, necessary and proper.

Dated:  June 16, 2017
        Elmsford, New York

                                        Respectfully submitted,

                                        **Knuckles, Komosinski & Manfro LLP**
                                        Attorneys for Wells Fargo Bank, N.A.
                                        not in individual capacity but solely as
                                        Trustee for RMAC REMIC Trust, Series
                                        2009-4 c/o Rushmore Loan
                                        Management Services LLC


                                        By: _____
                                        STUART KOSSAR, ESQ.
                                        565 Taxter Road, Suite 590
                                        Elmsford, New York 10523
                                        (914) 345-3020
                                        slk@kkmllp.com

15